UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*R# DET 019870*

| | |
|---|---|
| LICIA L. HARPER,<br><br>Plaintiff,<br><br>-vs-<br><br>ACS-INC, AMERICAN STUDENT-<br>ASSISTANCE, STUDENT LOAN XPRESS,<br>FIFTH-THIRD BANK NA, GREAT LAKES HIGHER-<br>EDUCATION CORPORATION, AMERICAN-<br>EDUCATION SERVICES, WACHOVIA BANK NA-<br>WACHOVIA EDUCATION FINANCE, WACHOVIA-<br>EDUCATION LOAN FUNDING, WACHOVIA-<br>STUDENT LOAN TRUST 2006-1<br><br>Defendants. | Case:2:10-cv-12112<br>Judge: Murphy, Stephen J<br>MJ: Hluchaniuk, Michael<br>Filed: 05-25-2010 At 04:39 PM<br>CMP: HARPER V. ACS-INC ET AL (NH)<br><br>JURY TRIAL DEMANDED |

Plaintiff, Licia Harper, alleges as follows against the defendants named above:

**OVERVIEW**

1. Licia Harper brings this civil action for injuries caused by the Defendants violations of

the Racketeer Corrupt Organizations Act, Fair Credit Reporting Act, and Fair Debt

Collection Practices Act against ACS-Education ("ACS"), American Student Assistance

("ASA"), CITGROUP/STUDENT LOAN EXPRESS ("SLX"), 5/3 BANK NA ("5/3"),

Great Lakes Higher Education Corporation/Great Lakes Educational Loan Services

("GLHEC"), PHEAA/American Education Services ("AES"), WACHOVIA/WELLS-

FARGO ("Wachovia"), WACHOVIA STUDENT LOAN TRUST 2006-1 ("Trust") for

conspiracy, concealment of material facts, knowingly and intentionally making materially

false statements to: the Plaintiff, the Department of Education ("DOE"), "DOE" Office of

Federal Student Aid, the "DOE" Secretary of Education, Experian, Trans Union, Equifax,

the National Student Loan Database ("NSLDS"), and other unknown parties;  knowingly

and intentionally misrepresenting to Plaintiffs that the loans were in administrative

forbearance while simultaneously representing to the "DOE", the credit bureaus, and

other interested third parties that the loans were entering into default; knowingly and

intentionally making false and fraudulent collection telephone calls to Licia Harper to

conceal the existence of fraud in certain Student Loan-Backed Notes held by the "Trust"

to obtain a positive investment rating from Fitch Ratings; knowingly and intentionally

making, using, and sending via mail false and fraudulent collection letters to conceal the

existence of fraud in certain Student Loan-Backed Notes held by the "Trust" to obtain a

positive rating from Fitch Ratings; conspiracy to collect student loans for which no valid

agreement exists; knowingly and intentionally making false reports and updates to the

"DOE" and "NSLDS" regarding the Plaintiffs enrollment status; denial of false

certification ability to benefit and unauthorized signature discharge request based on

incorrect facts and incorrect application of 34 C.F.R. § 682.402(e)(13)(iii)(A)(B). Licia

Harper prays for judgment against Defendants, Wachovia, Xerox/ACS-Inc, ASA, AES,

Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency, and each of them, as

follows For threefold the damages actually sustained and the costs of suit, in a sum not

less than $514,153.83, pursuant to 18 U.S.C.A. § 1964(c) with interest thereon at the rate

of six percent (_____6_____ %) per annum and for such other and further relief as the

Court may deem appropriate pursuant to 18 U.S.C.A. § 1964 and for such other and

further relief as the Court may deem proper and just in the premises.

## JURISDICTION AND VENUE

2.  This civil action arises under 18 U.S.C.A. § 1962, the Racketeer Influenced Corrupt

Organizations Act. This Court has jurisdiction of the claim herein pursuant to 18

U.S.C.A. § 1964(c) and 28 U.S.C.A. § 1331. Venue herein is proper under 18 U.S.C.A. § 1965(a) and 28 U.S.C.A. § 1391(b). Each Defendant directly or indirectly made use of the means or instruments of interstate commerce, of mails, and/or of electronic communication, in connection with the transactions, acts, practices, and courses of business alleged herein. Certain of the transactions, acts, practices, and courses of conduct constituting violations of law alleged herein occurred within this judicial district.

## DEFENDANTS

3. Defendant XEROX is a New York Corporation and ACS INC was incorporated under the laws of the STATE of Delaware prior to its acquisition by XEROX

4. . Defendant MHEAC /dba/ American Student Assistance is a Massachusetts not for profit organization.

5. Defendant CitGroup/SLX is a Delaware corporation.

6. Defendant GELSI is a Wisconsin corporation. Defendant GLHEC is a Wisconsin not for profit corporation. Both entities principal place of business is Madison, Wisconsin.

7. PHEAA is a Pennsylvania miscellaneous corporation operating under the fictitious name of American Education Services.

8. Wachovia Bank, National Association (Wachovia), is a national banking association with its designated main office in North Carolina and branch offices in many States; and Wells Fargo is Headquartered in San Francisco, California with its bank, Wells Fargo Bank, N.A., being legally chartered in Sioux Falls, South Dakota)

## FACTS

### A. WACHOVIA'S STUDENT LOAN TRUST'S INVESTMENT OFFERING

9. Wachovia Student Loan Trust 2006-1 **The Issuing Entity** A new trust formed by the depositor to issue each series of student loan-backed securities and a particular trust may issue multiple series of such securities. The assets of each trust will include: education loans to students or parents of students originated under the Federal Family Education Loan Program. American Student Assistance is the guarantor of loans originated by Wachovia Education Finance.  ACS-Inc is sub-servicer with respect to 80.9% of the principal balance of the trust student loans as of the cutoff date and American Education Services will act as sub-servicer with respect to 19.1% of the principal balance of the trust student loans as of the cutoff date. On June 21, 2006 Wachovia issued its **Offering Memorandum to investors** for **$1,610,835,000 in Student Loan-Backed Notes, which includes Ms. Harper's federal loans, held by the trust**.  The trust issued seven classes of notes and a class of excess distribution certificate.

| | Initial Principal | Amount Interest Rate(1) | Final Scheduled Distribution Date |
|---|---|---|---|
| Floating Rate Class A-1 Notes | $ 119,000,000 | three-month LIBOR minus 0.02% | October 25, 2013 |
| Floating Rate Class A-2 Notes | $ 234,000,000 | three-month LIBOR plus 0.00% | July 25, 2017 |
| Floating Rate Class A-3 Notes | $ 201,000,000 | three-month LIBOR plus 0.03% | October 25, 2019 |
| Floating Rate Class A-4 Notes | $ 216,000,000 | three-month LIBOR plus 0.08% | April 25, 2023 |
| Floating Rate Class A-5 Notes | $ 350,000,000 | three-month LIBOR plus 0.12% | July 26, 2027 |
| Floating Rate Class A-6 Notes | $ 442,510,000 | three-month LIBOR plus 0.17% | April 25, 2040 |
| Floating Rate Class B Notes | $48,325,000 | three-month LIBOR plus 0.24% | April 25, 2040 |

(1) Accrual period of the notes begins on a distribution date and ends on the day before the next distribution date; provided, that the first accrual period begins on the closing date and ends on October 24, 2006, the day before the first distribution date. A description of how LIBOR is determined is specified in the accompanying offering memorandum under "Certain Information Regarding the Securities — Floating Rate Securities — Determination of LIBOR."

10. On August 17, 2006 Wachovia issued its **Offering Memorandum Supplement to Offering Memorandum dated June 21, 2006** and registered the Wachovia Student Loan Trust Series 2006-1, with the Irish Stock Exchange. Wachovia Bank, National Association Wachovia Education Finance and Wachovia Education Loan Funding LLC. Wachovia Bank, National Association is the administrator of each trust. Wachovia Bank,

National Association will act is the sponsor of each trust. Wachovia Education Loan Funding LLC, a Delaware limited liability company, is the depositor. Wachovia Education Finance Inc. is the sole member of Wachovia Education Loan Funding LLC. Wachovia Education Finance Inc. will be the originator of the student loans. The master servicer will be Wachovia Education Finance Inc. The master servicer may contract with various other sub-servicers. The related offering memorandum supplement will identified any unaffiliated sub-servicers that service 10% or more of a trust's pool assets and any sub-subservicers that service 20% or more of a trust's pool assets, ACS Inc and American Education Services. Wachovia Education Finance Inc. is a majority owned, indirect subsidiary of Wachovia Bank, National Association. Wachovia Education Finance Inc. manages and operates the student loan lending and servicing business within the Wachovia family of companies, undertaking such activities on its own behalf and on behalf of Wachovia Bank, National Association and other Wachovia affiliates and with respect to various unrelated parties. The 2006 Trust was never registered with the US Securities and Exchange Commission due to the August date of the registration being before a good portion of the notes offered by the "Trust" were originated by students participating in the FFELP who chose Wachovia Education Finance  as their lender and disbursed to said students. Accordingly, the Wachovia Student Loan Trust Series 2005-1 securities were not offered to investors until November 16, 2005; thus, registered with the SEC on November 23, 2005 and registered with the Irish Stock Exchange on November 28, 2005. Both of the aforementioned dates were well after the federal financial aid funds held and offered by the trust were originated by students receiving federal financial aid through FFELP and disbursed to said students.

## A. <u>THOMAS M. COOLEY LAW SCHOOL PROGRAM</u>

11. TMCLS has five schedule options for students enrolled in the juris doctorate; the Standard Schedule of 12 credits per term/year around for 36 months' the Traditional Schedule of 15 credits for two consecutive terms for 36 months; The Extended Schedule of 9 credits per term/year around for 48 months; Reduced Credit Schedule of 6 credits pert term year around for 5 years schedule. At the time of Ms. Harper's matriculation TMCLS did not have a schedule or program that was 75 months or 6 years and 3 months long. TMCLS required all students who were enrolled in the J.D. to complete the program in no less than 2 years and no more than 5 years or 60 months from the date they matriculate into the program; and LLM joint degree students must complete the LLM program within 6 years or 72 months from the date they matriculate into the program. In 2006 Licia Harper applied and was offered admission at several law schools including Thomas M. Cooley Law School who also offered Ms. Harper a merit based honors scholarship to encourage her to accept their offer of admissions.

12. Based on the counselor's suggestion Ms. Harper agreed to the recommended 48 month program at the Oakland/Auburn Hills Campus. Due to the pending ABA accreditation for the full program at Oakland in 2006 Ms. Harper changed her class location choice from the Oakland campus to the Lansing Campus. However, Ms. Harper did not change her class schedule/ program choice of 48 months. In June 2006 Ms. Harper completed the FAFSA online due to a letter she received from the financial aid department directing her to complete and submit her Federal Application for Student Aid or FAFSA and submit it to the school to process her aid package. In July 2006 the TMCLS financial aid office provided Ms. Harper with a list of preferred lenders that included Wachovia Education

Finance the education subsidiary of Wachovia Bank. Ms. Harper chose Wachovia as her Federal Financial Aid lender based on the recommendations and statements of the financial aid office that Wachovia was the lender used by the majority of students, Wachovia's name and logo on the TMCLS financial aid materials which contained no other lenders name or logo, and Wachovia's inclusion on TMCLS preferred lender list.

13. Ms. Harper completed the application required by Wachovia and again listed her Anticipated Completion Date as the one given to her by the admissions counselor as well as the program schedule information the school provided. At no time did she list, have knowledge of, or agree to an Anticipated Completion Date of 12/17/2012. In July 2006 Ms. Harper received a financial aid award letter from TMCLS for her Federal Stafford Loans in 2006-2007 which listed Wachovia/Educaid as her lender. The letter also stated they would be sending the school certification for the loans in August 2006. The packet also contained the federal financial aid guidelines for students regarding maintaining eligibility to receive aid.

14. On September 11, 2006, the second week of class, Ms. Harper received notification via email that her financial aid had been processed and she could pick up the remaining financial aid allocated for living/school related expenses at the business office. On October 11, 2006, nearly one month after Licia Harper's loans were disbursed, American Student Assistance, the guarantor of the Wachovia Federal Stafford Loans, GA Code: 725 certified my full-time enrollment status to NSLDS and listed my Anticipated Completion Date as:12/17/2012. (Licia Harper was not aware of this until she received a copy of the Guaranty Agency NSLDS Enrollment Detail sheet from the guaranty agency in 2009). Despite the FFELP requirement that student's receiving federal aid must have

their enrollment status certified with NSLDS prior to the disbursement of federal financial aid which again includes certification of student's Anticipated Completion Date. Moreover, both TMCLS  and American Student Assistance guaranty agency participate in the Clearinghouse enrollment status reporting organization, which is the NSLDS student enrollment status reporting organization for all participating schools and guaranty agencies.

15. Per the Clearinghouse Participation Agreement participating schools and  guaranty agencies are required to delegate all  NSLDS student enrollment status reporting duties to the Clearinghouse, and it is a violation of the Participation Agreement for participating schools and guaranty agencies to make any enrollment status updates directly to NSLDS, thereby circumventing the Clearinghouse.

16. In July 2007 Ms. Harper electronically applied for and received a PLUS loan from to cover expenses arising from her acceptance into an Entertainment Law study abroad at Oxford University for the coming Fall 2007 semester. Based on the recommendations from the TMCLS financial aid department she chose Student Loan Xpress/Fifth Third Bank as her lender The loan was guaranteed by GLHEC guaranty agency. Ms. Harper listed her Anticipated Completion Date as being the one originally disclosed to her by the school . She did not list 12/17/2012 as her 'ACD'

B. <u>**PERMISSION TO ATTEND MSU COLLEGE OF LAW AND INCORRECT ENROLLMENT STATUS.**</u>

17. Due to an unfortunate incident that occurred in July 2007, which impeded her ability to attend the Entertainment Law Program at Oxford University, in August of 2007 Ms. Harper made the decision to attend MSU College of Law as a guest student and received permission from TMCLS to do so for the upcoming September 2007 semester. She received permission because of the seriousness of the incident that occurred in July 2007, despite the strict school rule that students may not attend any other law school as guest or auditing students while enrolled at TMCLS for the September 2007 semester.

18. On August 17, 2007 due to an unfortunate non-financial aid related issue that occurred in July 2007.  Per the Dean, who was handling the incident, request Ms. Harper sent a courtesy notifying him of her desire to take classes at MSU College of Law. The email was not and could not be considered official notification to the school due to the school's written policy requirements for requesting a Leave of Absence. Per the Dean who gave Ms. Harper permission to attend MSU College of law as a guest student,  in September 2007, Ms. Harper submitted the requisite Leave of Absence paperwork to the financial aid department so her financial aid would not go into repayment while she was enrolled in school full time. The Dean sent written confirmation that Ms. Harper was granted permission to attend MSU College of Law.

19. In September 2007 Ms. Harper was notified that TMCLS would not send her federal financial aid to MSU College of Law despite granting her permission to attend classes there. Therefore, she obtained a private loan from Sallie Mae to cover the cost of her tuition at MSU College of Law. Because private education loans are not funded through the FFELP program schools and lenders are not required to make any report to NSLDS. In Ms. Harper's case as a guest student at MSU College of Law, her status would have

remain unchanged regarding her full time enrollment at TMCLS due to their granting her permission to attend MSU.

20.  On September 24, 2007 Great Lakes Higher Education Guaranty Agency certified to NSLDS that Ms. Harper was enrolled in school full time at TMCLS and listed her Anticipated Completion Date as: 12/17/2012.

21. However, despite GLHEC reporting and certifying her full time enrollment at TMCLS, in September 2007 Ms. Harper began receiving repayment status notices and invoices from Great Lakes, Wachovia, and AES despite Great Lakes having knowledge of her full time enrollment due to their reporting her status to NSLDS one week prior. Accordingly she contacted all the above mentioned companies and was notified her loans had entered into repayment due to her graduation from TMCLS. Ms. Harper informed the representatives of each company that she had not graduated and was a full time student. She was told the error was corrected. an in school deferment was applied to the account.

22. On October 8, 2007 Great Lakes Higher Education Guaranty Agency reported to NSLDS that Ms. Harper GRADUATED from Thomas M. Cooley Law School on 8/19/2007 and listed her Anticipated Completion Date as 8/19/2007 despite having knowledge to the contrary. On October 9, 2007 American Student Assistance reported to NSLDS that Ms. Harper had withdrawn from school effective 8/19/2007 and listed her Anticipated Completion Date as 12/17/2012. In October 2007 Ms. Harper again received invoices from AES, Wachovia, and Great Lakes notifying her of past due balances due to the repayment status of the loans. She again contacted each servicer by phone as well as by email to notify them of her full time status at MSU. She also asked MSU to send AES,

Wachovia, and Great Lakes verification of her full time enrollment. Again each servicer
assured her a deferment was applied and the loans were no longer in repayment.

23. On October 31, 2007 Ms. Harper received notice that AES had received verification of
her full time enrollment. However, AES applied forbearance to her account to expedite
the repayment and collect additional interest as opposed to the standard in school
deferment.  In November 2007 despite receiving notice from AES that they received
verification of her enrollment, Ms. Harper again received notices from AES, Wachovia,
and Great Lakes notifying her of the increasing past due balance and delinquency of her
loans. She again contacted each servicer by phone and email to notify them of the
account error. The servicers instructed her to request verification of her full time
enrollment be sent to them from MSU College of law to correct the problem.

24. In November 2007 Licia Harper sent a status change request along with her class
schedule verifying her full time enrollment. The servicers refused to update her status
claiming they had to receive verification from the school despite the Federal Student Aid
rule which states in part. "borrowers are responsible for contacting their lenders to update
any change in enrollment status...." In November 2007 MSU College of law again sent
Wachovia, Great Lakes, and AES verification of Ms. Harper's full time enrollment status.

25. In January 2008 Licia Harper was informed by a Wachovia representative, Michelle that
someone contacted Wachovia on August 17, 2007 to inform them that she had graduated
and requested a status change. Wachovia regarding the delinquency notices she continued
to receive. The delinquency notices claimed she was nearly 30 days past due despite
MSU having sent three separate enrollment verification letters of her full time
enrollment.

26. In January 2008, despite registering for 12 credits at MSU for the upcoming semester, Ms. Harper was forced to completely withdraw from school due to her inability to receive federal financial aid as a result of her NSLDS 'graduated' status.

## C. DEPARTMENT OF EDUCATION OFFICE OF FINANCIAL STUDENT AID COMPLAINT/ DISCOVERY OF ENROLLMENT STATUS REPORTER AND CHANGED ANTICIPATED COMPLETION DATE

27. March 2008 Ms. Harper filed a complaint the Department of Education Office of Financial Student Aid regarding the erroneous 'Graduated' status still listed as being correct on her NSLDS report. Ms. Harper continued to receive collection letters from Great Lakes Higher Education that contained a past due balance and days past due dating back to when she was enrolled in school full time. When Ms. Harper attempted to correct the error with Great Lakes they initially claimed they lost the numerous enrollment verifications both she and MSU sent. On March 17, 2008 Great Lakes sent notification they located the documentation, however, they refused to apply the corresponding in school deferment, instead GLHEC applied a forbearance with the intent of expediting repayment and charging additional interest. Due to a letter each lender and guaranty agency received from Ms. Harper's Former Attorney on February 24, 2008 Great Lakes amended the NSLDS Enrollment Detail for Ms. Harper by changing their 10/8/2007 original enrollment status report that Ms. Harper 'graduated' from Thomas M. Cooley Law School to 'withdrawn'. GLHEC also added Michigan State University to NSLDS and certified Ms. Harper graduated from MSU College of Law on 12/19/2007. GLHEC added MSU despite Ms. Harper having never received any federal loans at MSU College

of Law. In April 2008, the Department of Education informed Ms. Harper that GLHEC reported her as having 'graduated' from MSU College of Law; thus, changing her status from Full Time and effectively stopping her ability to receive FFELP funding for her education.  The Department of Education later sent Ms. Harper a detailed printout of her NSLDS enrollment history. On October 21, 2009 Ms. Harper sent a written dispute of the Wachovia, AES,  and Great Lakes loan accounts along with supporting documentation due to the inaccurate past due amount and days past due listed in each company's credit file for Ms. Harper. In December 2009 Ms. Harper sent Wachovia, Great Lakes and AES discharge requests for her student loans due to the false certification of her ability to benefit from the training offered at Thomas M. Cooley Law School and the use of unauthorized signature/electronic pin after the date was changed.

## D. <u>STUDENT LOAN XPRESS, FIFTH-THIRD BANK, GLHEC, WACHOVIA, ACS-INC, AND AES TO DENIAL OF DISCHARGE</u>

28. February 2010 Wachovia, ACS, and Great Lakes sent letters refusing to investigate as well as grant the false certification discharge requests. The letters were dated 2009 not 2010 with the intent to deceive the DOE, and investors regarding the true status of the loans offered by the trust due to the upcoming Fitch investment rating of the Student Loan Asset back Securities. As a result, Ms. Harper sent written disputes of the loan accounts as well as documentation in support of her dispute to Equifax, Transunion, and

Experian due to the inaccurate information being reported on her credit file regarding the loan accounts.

29. March 2010 due to the refusal of Wachovia, Great Lakes, 5/3 Bank, ACS, and AES to investigate Ms. Harper's discharge requests based on her lack of 'ability to benefit' from TMCLS's JD program and the 'unauthorized signature' used on the loan applications/MPN used to obtain the federal funds, Ms. Harper contacted the aforementioned servicers to alert them of her intent to take formal legal action if the ongoing dispute regarding the loans could not be resolved. Due to said email Ms. Harper received a response via email on behalf of ASA from Chris Callanan requesting the opportunity to speak with her by phone. Accordingly Ms. Harper agreed to speak to Mr. Callanan on March 17, 2010. Additionally, due to the 'Notice' referenced above that Ms. Harper sent,  GLHEC placed the loans in 60 day administrative forbearance. To date it has been more than 60 days and Ms. Harper has received no response from GLHEC.

30. On March 17, 2010 Ms. Harper spoke with Mr. Callanan and stated with detail the basis of her discharge request. As a follow up to the conversation she sent Mr. Callanan an email which she attached documentation in support of her request along with a Memorandum of Law in Support of Discharge. The Memorandum listed all the relevant and applicable statutes that state with specificity the eligible student requirements for participation in the FFELP program. Based on the statutes and facts Ms. Harper was never an eligible student due to the certified Anticipation Completion Date being much more than a year 3 months longer than time allowed by TMCLS to remain eligible for completion of the program and juris doctorate degree. Thus, Ms. Harper did not have the ability to benefit from the program/training offered by TMCLS because she would not

have received the degree required to be eligible to sit for the bar exam, which is the exam

required to work as an attorney.

### E.  RESPONSE FROM DEPARTMENT OF EDUCATION

**31.** On January 5, 2010 Ms. Harper received a letter from the Department of Education on

behalf of the secretary refusing to grant her Discharge request.

### F.  PENDING INVESTMENT RATING FROM FITCH RATING

32. On March 26, 2010 Fitch Investment ratings  company issued a statement saying they

were in the process of reviewing several Student Loan Asset Backed Security Trusts,

included in the review was the Wachovia Student Loan Trust Series 2006-1 the Trust that

Ms. Harper's fraudulent Wachovia loans were disbursed from.  In April 2010 Ms. Harper

due to the pending Fitch Security Investment Rating and Wachovia's intent to deceive

both the rating company as well as shareholders regarding the true status of the loans held

by investors of the Student Loan Trust Series 2006-1 Ms. Harper received a letter from

ASA dated April 30, 2010 stating her loans were more than 270 days past due and were

now in default.

33. As a result, on April 30, 2010 the Trust received an, 'Outlook Stable' rating from Fitch.

The letter also requested she contact, ..., despite receiving specific instructions not to

contact anyone at ACS or ASA except Mr. Callanan, and despite the numerous

assurances that the loans were given a 60day administrative forbearance.  In May 2010

ASA, through its representatives Chris Callanan and Betsy Mayotte,  informed Ms. Harper they refused to discharge her loans despite her Actual Completion Date being 6 years and 3 months from the date of matriculation for a program that requires completion in 5 years; and despite her lack of consent, e-signature by PIN, or signature on the loan documents containing the new ACD of 12/17/2012.

34. Callanan and Mayotte she did not qualify for discharge because she could register and take as many classes as she wished, despite the school rule which states otherwise. They did not address the request for discharge based on the unauthorized signatures on the Application and Promissory Note. They also claimed the loans were in fact not in default like the April 30, 2010 letter claimed.

35. Mayotte  stated that her pet cat felt sorry for her due to her participation in the call from home, then suggested that Ms. Harper think about initiating legal action against TMCLS, despite ASA being the organization who made the initial report to NSLDS that her Anticipated Graduation Date was 12/17/2012  which is not the date she agreed to which is supported by her schedule/program choice at TMCLS and also supported by the graduation MSU disclosed to her and the loan servicers in their enrollment verification. Plaintiff prays for judgment against Defendants, Wachovia, Xerox/ACS-Inc, ASA, AES, Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency, and each of them for threefold the damages actually sustained and the costs of suit, in a sum not less than $514,153.83, pursuant to 18 U.S.C.A. § 1964(c) with interest thereon at the rate of six percent (_____6_____ %) per annum For such other and further relief as the Court may deem appropriate pursuant to 18 U.S.C.A. § 1964 and for such other and further relief as the Court may deem proper and just in the premises.

## CLAIMS FOR RELIEF

### I. FALSE CERTIFICATION ABLILITY TO BENEFIT/UNAUTHORIZED SIGNATURE

48. Licia Harper was never eligible to earn a juris doctorate degree from Thomas M. Cooley Law School due to her actual completion date being 12/17/2012 or six years, three months, and 11 days from the date of matriculation which was, 9/6/2006. TMCLS does not have a schedule or program that is 75 months long or 6 years and 3 months. J.D. students must complete the program in 5 years or 60 months from the date they matriculate into the program; and LL.M students must complete their program within 6 years or 72 months from the date they matriculate into the program. Thus, based on her completion date Licia Harper did not have the ability to benefit from the legal training offered by Thomas M. Cooley Law School because she was not an eligible Juris Doctorate Candidate based on her certified date of graduation.

### II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

49. On January 5, 2010 Licia Harper received a letter from the Department of Education refusing to grant her discharge. The refusal was based on the erroneous assertion by the DOE, ACS, ASA, Great Lakes, and Wachovia that Ms. Harper was requesting discharge of her loans because she was unhappy with the school. Due to the severity of the aforementioned erroneous facts because the Department of Education failed to consider that Ms. Harper did not have the ability to benefit from the training offered at Thomas M. Cooley Law School and that her Anticipated Completion Date was changed without her knowledge or consent on 9/25/2006. Because no time did Licia Harper agree to or have knowledge that her ACD was changed to 75 months for a 24 to 60 month program. Licia Harper did not sign a Master Check or Electronic Funds Transfer

Authorization prior to the school receiving and using the Stafford Funds transferred to the school based on the Anticipated Completion Date of 12/17/2012. Therefore, an unauthorized signature was used to make the disbursements after the aforementioned date. Moreover the DOE, ACS, ASA, Great Lakes, and Wachovia's explanation for its decisions is counter to the evidence before the agency and implausible.

### III. RICO

50. Wachovia, Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency collectively acting in concert is an enterprise engaged in and the activities of which affect interstate or foreign commerce, to wit: Wachovia, American Student Assistance and ACS-Inc, a group of individuals associated in fact and acting in concert to fraudulently execute student loans make fraudulent misrepresentations regarding accounts, student eligibility, the status of debts; commit mail and wire fraud;  submit fraudulent claims and services in matters affecting government; make fraud and false statements; obstruct justice; in furtherance of its scheme to collect an unlawful debt and fulfill their contract with investors of said student loans which were offered by Wachovia in the form of Series graded notes as asset backed securities held by the Wachovia Student Loan Trust Series 2006-1.

51. Defendants, Wachovia, Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency as persons within the meaning of 18 U.S.C.A. § 1961(3), received income derived, directly or indirectly, from a pattern of racketeering activity which was used to acquire and maintain an interest in said enterprise in violation of 18 U.S.C.A. § 1962(a).

52. Defendants, Wachovia, Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency , as persons within the meaning of 18 U.S.C.A. § 1961(3), through a pattern of racketeering activity, acquired and maintained, directly, control of said enterprise in

violation of 18 U.S.C.A. § 1962(b).  Defendants, Wachovia, Xerox/ACS-Inc, Fifth Third; SLX;

Great Lakes Higher Education Guaranty Agency, as persons within the meaning of 18 U.S.C.A.

§ 1961(3) and as persons associated with said enterprise, conducted and participated, directly and

indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering

activity in violation of 18 U.S.C.A. § 1962(c).

53. The predicate acts which constitute this pattern of racketeering activity are:

a. Wachovia's fraudulent execution of student loans that contained erroneous data in order to fulfill its fiduciary duty to investors in the notes offered in the Wachovia Student Loan Trust Series 2006-1 and Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency agreement to act in concert with Wachovia to conceal the fraudulently executed notes from investors in the 2006-1 trust, students who executed the promissory notes, the Department of Education, Fitch investment rating company, and the Securities Exchange Commission;

b. Wachovia, Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency conspiracy to conceal the false certification of Plaintiff's status in furtherance of its conspiracy  to conceal the fraudulent student loan asset backed security offering to investors in June 2006 ; Wachovia, Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency agreement to conspire to false representations to Plaintiff, the Department of Education, and multiple 3rd parties regarding its knowledge of the fraud existent in the execution of the alleged agreement despite having contradictory knowledge and documentation;

c.  GLHEC payment of unlawful kickbacks in furtherance of its scheme to fraudulently execute Promissory Notes to collect unlawful debts and agreement to conspire with American Student Assistance, Wachovia, and ACS  to intentionally report erroneous student enrollment information to the Department of Education National Student Loan Database;

d.  Wachovia knowingly, willful, and intentional fraudulent certifications made through its unlawful change and erroneous updates of Plaintiff's enrollment status to the Department of Education to fulfill its duty to investors in the Wachovia Student Loan Trust Series 2006-1. Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency knowingly, willingly, and intentionally acted and continue to act in concert with Wachovia to conceal the fraud from students, the Department of Education, Investors, Fitch investment rating company, the Irish Stock Exchange, and all other interested parties.

e.  Wachovia, Xerox/ACS-Inc, Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency conspiracy to obstruct justice through its continued improper investigation of Plaintiff's request  and scheme to violate strict procedure and Intentional violation of its FFELP Participation Agreement in furtherance of its scheme to collect an unlawful debt from students and the Department of Education.

f.  Wachovia, ACS, and American Student Assistance intentional fraudulent misrepresentation to Licia Harper and Fitch Investment Rating Company that Ms. Harper's loans were 290 days past due, thus, in default in order to obtain a

satisfactory: Outlook Stable rating from Fitch Investment Rating Company on April
30, 2010.

g.   Wachovia, Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher
Education Guaranty Agency acting in concert  to conceal the existence of fraud in the
execution of the alleged agreements; continued mail and wire fraud; fraudulent claims
and services in matters affecting government; fraud and false statements; obstruction
of justice; repeated attempts to enforce an unlawful agreement; deprivation Plaintiff
of property, contract rights, civil and constitutional rights; deprivation of contractual
rights and intangible rights to honest services after having knowledge and receipt of
notice of the existence of fraud in the execution of the alleged agreements,  Plaintiff's
disputes of the aforementioned transactions through its refusal to properly review
Plaintiff's discharge requests in accordance with 34 C.F.R. § 682.402(e) as evidenced
in multiple letters sent by GLHEC the last being 2/17/2010; multiple letters sent by
Wachovia the last being 2/2/2010 dated erroneously as 2/2/2009; and telephone
conversations with Wachovia and ACS-Inc 2/11/2010 and 2/16/2010 recorded by
plaintiff; all in furtherance of the Defendants attempt to collect unlawful debts.

h.   Wachovia, Xerox/ACS-Inc, Fifth Third; SLX; Great Lakes Higher Education
Guaranty Agency repeated attempts to collect the fraudulent, thus, unlawful debt after
having been made aware of the fraud.

i.   Wachovia, Xerox/ACS-Inc, ASA, AES Fifth Third; SLX; Great Lakes Higher
Education Guaranty Agency acting in concert to fraudulently misrepresentation the
debt and the agreements are legally valid to the Plaintiff, Department of Education,

Investors in the notes offered by Student Loan Trust,  the Irish Stock Exchange, credit

bureaus, and all other interested parties.

j.   On or about March 4, 2010 Defendants Wachovia , Xerox/ACS-Inc sent a letter dated

March 4, 2010 via UPS to the Plaintiff stating their refusal to follow the mandatory

discharge procedures outlined in the following statutes governing the administration

of FFELP funds and requests false certification discharge **20 U.S.C. § 1071; 34**

**C.F.R. § 682.402(e);  and 20 U.S.C. § 1087(c). The Defendants also clearly stated**

**their intent to continue collection of the unlawful debt without investigating the**

**Plaintiffs claim the debt was falsely certified due to the existence of fraud in the**

**execution of the MPN and certification.**

54. These more than two acts of racketeering, occurring within ten years of one another,

constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. § 1961(5).

55. Plaintiff was injured in his property by reason of this violation of 18U.S.C.A. § 1962, in that,

as a direct result and proximate cause of Defendant's complained of acts, Plaintiff suffered

damages, including loss of property, deprivation of rights, severe financial harm, emotional

distress, physical injury, mental anguish and pain, loss of employment,  and fraudulent

conversion of property.

WHEREFORE, Plaintiff prays for judgment against Defendants, Wachovia, Xerox/ACS-Inc,

ASA, AES, Fifth Third; SLX; Great Lakes Higher Education Guaranty Agency, and each of

them, as follows:

1. Discharge of all federal loans received by the above Defendants in connection with
   attendance at Thomas M. Cooley Law School;

2. For threefold the damages actually sustained and the costs of suit, in a sum not less than
   $514,153.83, pursuant to 18 U.S.C.A. § 1964(c) with interest thereon at the rate of six
   percent (_____6_____ %) per annum;

3. For such other and further relief as the Court may deem appropriate pursuant to 18
   U.S.C.A. § 1964 and

4. For such other and further relief as the Court may deem proper and just in the premises.

5. For trial by jury on all issues so triable.

   Date: May 25, 2010

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

County in which action arose __Wayne__

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Licia Harper

**(b)** County of Residence of First Listed Plaintiff   __Wayne__
(EXCEPT IN U.S. PLAINTIFF CASES)

1751 Seminole
Detroit, MI  48214

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS

ACS INC/XEROX, AES, ASA, WACHOVIA/WELLSFARGO
CITGROUP/SLX, 5/3 BANK NA GLHEC, SLX/CITGROUP

County of Residence of First Listed Defendant   Dallas County
(IN U.S. PLAINTIFF CASES ONLY)

Case:2:10-cv-12112
Judge: Murphy, Stephen J
MJ: Hluchaniuk, Michael
Filed: 05-25-2010 At 04:39 PM
CMP: HARPER V. ACS-INC ET AL (NH)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C.A. §§ 1961 et seq

Brief description of cause:
RICO-Racketeer Influenced Corrupt Organizations Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $514,153.83

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
May 21, 2010

SIGNATURE OF ATTORNEY OF RECORD
PRO SE

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.      Is this a case that has been previously dismissed?        ☐ Yes
                                                                  ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.      Other than stated above, are there any pending or previously
        discontinued or dismissed companion cases in this or any other     ☐ Yes
        court, including state court? (Companion cases are matters in which ☒ No
        it appears substantially similar evidence will be offered or the same
        or related parties are present and the cases arise out of the same
        transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :